DOWNEY, RECEIVER *v.* CITIZENS STATE BANK OF NOBLESVILLE.

[No. 14,859. Filed March 25, 1935.]

*Earl R. Conder,* for appellant.

*Thomas E. Kane, Ralph K. Kane, Gideon W. Blain,* and *Robert Hollowell, Jr.,* for appellee.

Appellee, the payee of a check which the drawer had had certified by the Washington Bank and Trust Company, brought this suit by way of an intervening petition, in two paragraphs, filed in the receivership of the last named bank asking that the amount of such check, viz., $1250.00 be declared to be a preferred claim and as such entitled to priority. The appellant contested the allowance as preferred and a hearing was had with a finding and judgment for the intervening petitioner. A motion for a new trial, alleging as ground therefor that the decision was not sustained by sufficient evidence and that it was contrary to law, was overruled, following which this appeal was perfected, assigning as error the overruling of such motion.

After stating the facts, KIME, J., rendered the following opinion:

The appellee here advances the theory that under the Uniform Negotiable Instrument Act that since this was a check it operated as an assignment of the funds and that after such assignment the fund was then held in trust for the payee, contending further that clause 2 of section 2 of the Uniform Collection Code (Acts of 1929, page 520) applied and cited for his authority the case of *Central Trust Company* v. *Bank of Mullens* (1930), 109 W. Va. 119, 153 S. E. 145. There is some dicta in this case favoring appellee's position but since it is dicta and is decidedly in the minority we prefer not to follow it.

The appellant contends that the certification of the check is nothing more than the substitution of the certifying bank as the debtor in place of the drawer of the check. Section 187 of the Uniform Negotiable Instrument Act, Acts 1913, page 149, provides that: "Where a check is certified by

the bank on which it is drawn, the certification is equivalent to an acceptance." Section 62, p. 130, of the Act provides, "The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) The existence of the payee and his then capacity to endorse." It would seem then, and we so hold, that the certification or acceptance by the bank was nothing more than the certification by the bank that the signature of the drawer was genuine and that he had, at that time, the capacity and authority to draw the instrument. Thus we find nothing in the act itself which would tend to indicate, in any way, that the bank intended to be bound or that the legislature intended for it to be bound in any other way than as a debtor. Nor does section 189, p. 149, of the act lead us to any other conclusion. This section provides, "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Assuming, as we must from the language of the statute that the certification of the check payable to order operated as an assignment, we are of the opinion that the assignment was only from the drawer to the bank. The drawer, by consenting to the certification, in effect assigned the amount of the check to the bank and the bank then became the debtor of whosoever should present the same in due course to the bank for payment.

There is an Indiana case, Born v. The First National Bank of Indianapolis (1889), 123 Ind. 78, 80, 24 N. E. 173, which was decided before the adoption of the Uniform Negotiable Instrument Act, which, among other things, has this to say as to the effect of certification:

"The certification of a check does not completely change its character; on the contrary, it changes it only in one particular, although the change, it is true, does produce a difference in the relation of the original parties, inasmuch as the drawee ceases to be the debtor of the drawer for the amount represented by the check. But this is the extent of the change in the situation of the respective parties in all cases where the certification is not procured by the holder of the check after it passes into his hands. It remains an order for the payment of money, and the certification, when made before delivery, operates in favor of third parties simply as an assurance that it is genuine, and will be paid. The bank that certifies it becomes bound, but, beyond this, nothing is added to the legal force or effect of the instrument . . ."

After a careful search of the authorities we find nothing aside from the dicta mentioned above to support the contention of the appellee here.

Morse on Banks and Banking, Volume 1, paragraph 414, p. 922, has this to say, among other reasons why the certification does not, in effect, create a trust: "By the acceptance or certification of the check, a new and specific engagement is entered into by the bank with the holder and his legal transferees. This engagement is simply and unconditionally to pay to him or them the sum named in the check on demand. The check ceases in fact to be a check, and becomes a promise to pay."

This author goes on to say that the majority view (if not in effect the only one) is that the payee of a check is simply a contract creditor of the bank and nothing more. See cases cited therein. See also *People* v. *St. Nicholas Bank* (1894), 77 Hun. 159, 28 N. Y. S. 412, 51 Am. and Eng. Ency. of Law (2d. ed) 1056. See also 7 C. J. 707 to the effect that "the certify-

ing creates no trust in favor of the holder and no lien on any particular assets of the certifying bank." See also *Lloyds* v. *Butler County State Bank* (1927), 122 Kan. 835, 253 Pac. 906, 51 A. L. R. 1030. See also the annotations in 73 A. L. R. 66 and supplemental decisions cited thereto on the closely related question of the right of the holder of a cashier's check to a preferred claim against the assets of an insolvent bank, which hold, uniformly, that they are not entitled to preference.

For the above reasons the judgment of the trial court is reversed with instructions to allow appellee's claim as a general claim.